**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CRIMINAL ACTION NO. 3:14CR-108-JHM**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**VS.**

**HOWARD KEY CHAMBERS** **DEFENDANT**

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Howard Key Chambers, to suppress evidence. [DN 58]. Fully briefed, this matter is ripe for decision. For the reasons that follow, Defendant's Motion to Suppress Recorded Statements [DN 58] is **DENIED**.

## I. BACKGROUND

The present motion stems from the recorded interview of Defendant, Howard Key Chambers ("Chambers"), at his home by Detective Darin Odier of the Indianapolis Police Department (and Internet Crimes Against Children Task Force) and Detective Brian Wright of Louisville Metro Police Department (and Federal Bureau of Investigation Electronic Crimes Task Force). On the morning of October 16, 2014, police officers simultaneously executed an arrest warrant for Chambers and a search warrant of Chambers' residence. While officers were executing the search warrant, Detectives Odier and Wright questioned Chambers. Defendant now seeks to have the statement he made during the interview with the officers suppressed.

The questioning conducted by officers on October 16 focused specifically on Chambers' involvement with co-defendant, Christopher Kosicki, who Chambers had met via Craig's List. Following contact with Kosicki online, Chambers traveled from his residence in Oldham County, Kentucky to Kosicki's residence in Louisville, Kentucky. Once there, Kosicki allegedly

introduced Chambers to a ten-year-old child for the purpose of engaging in sexual activity. According to the United States, Chambers returned to Kosicki's residence approximately six to eight more times for the same purpose and money was allegedly exchanged afterwards.

Defendant is charged, by way of a Superseding Indictment [DN 24] returned on November 12, 2014, with enticement and aiding and abetting the sex trafficking of a child under the age of 14, in violation of 18 U.S.C. §§ 2422(b) and 1591(a)(1), (b)(1), and (e)(3), respectively.

## II. ANALYSIS

The Fifth Amendment privilege against self-incrimination is implicated whenever an individual is "taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." Miranda v. Arizona, 384 U.S. 436, 478 (1966). Because custodial interrogations are said to be inherently coercive, Miranda established that a suspect must be apprised of certain rights to protect the privilege against self-incrimination. See Dickerson v. United States, 530 U.S. 428, 435, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). A suspect may waive his Miranda rights "provided the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444. The burden rests on the United States to show that the suspect waived his Miranda rights. Berghuis v. Thompkins, 560 U.S. 370, 383 (2010). However, the United States "does not need to show that a waiver of Miranda rights was express. An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence." Id. at 384 (citing North Carolina v. Butler, 441 U.S. 369, 376 (1979)). In other words, certain situations permit a finding of an implied waiver where it "can be clearly inferred from the actions and words of the person interrogated." Butler, 441 U.S. at 373 (1979). "To establish an implied waiver, the prosecution must show (1) that a Miranda warning was given,

(2) that it was understood by the accused, and (3) that the subsequent statement was uncoerced." United States v. Miller, 562 Fed. Appx. 272, 289 (6th Cir. 2014) (citing Berghuis, 560 U.S. at 384).

The United States does not contest that Defendant was in custody or that police were obligated to provide him with a Miranda warning. Here, the only issue is whether Defendant waived his rights. To this, Defendant asserts his statement made during the interview must be suppressed because he never affirmatively waived his rights. Additionally, he contends that suppression is warranted because police coerced his statement. In response, the United States maintains that the recorded interview unquestionably shows that Defendant implicitly waived his Miranda rights and his statement was made without coercion.

**A. Implicit Waiver**

At the commencement of the interview between Defendant and police, an officer provided the following Miranda warning:

> So like everything else, you've probably heard this before watching TV or whatever, but it's procedure and we always go through it. So, before we ask you any questions you have to understand your rights, you have the right to remain silent, anything you say can be used against you at court, you have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during any questioning. If you can't afford a lawyer one will be appointed for you before any questioning if you wish. If you decide to answer questions now without a lawyer present you still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer. Do you understand what I just read to you sir?

[Ex. 1, DN 59-1 at 00:02:04-02:34]. Defendant acknowledged that he understood his rights after the officer explained them to him by responding with "yes, sir" to the officer. Id. He concedes this point in his brief. [Def.'s Mot. to Suppress Recorded Statements, DN 58, at 3] ("Mr. Chambers confirmed that he understood his rights . . . . ."). Instead, Defendant argues that the problem is that he "never expressed consent to waiving his rights: the investigator simply began

questioning him, and he obediently answered." Id. However, "'waiver may be clearly inferred . . . when a defendant, after being properly informed of his rights and indicating that he understands them, nevertheless does nothing to invoke those rights' and speaks." United States v. Adams, 583 F.3d 457, 467 (6th Cir. 2009) (quoting United States v. Nichols, 512 F.3d 789, 798 (6th Cir. 2008)). Defendant's suggestion that obediently answering questions is somehow demonstrative of a lack of a waiver on his part is unsupported by case law. To the contrary, the United States Supreme Court observed that

> [Miranda] does not impose a formalistic waiver procedure that a suspect must follow to relinquish those rights. As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford.

Berghuis, 560 U.S. at 385. Thus, Defendant's continual participation in the interview is indicative of his decision to waive his rights.

The Court finds this case almost indistinguishable from the factual scenario addressed by the Sixth Circuit in United States v. Weir, 587 Fed. Appx. 300 (6th Cir. 2014). In Weir, the defendant argued that he did not expressly waive his Miranda rights, despite the fact that he acknowledged that he understood his rights after officers read him his Miranda rights. United States v. Weir, 587 Fed. Appx. 300, 303 (6th Cir. 2014). Just as Chambers did in the present case, the defendant in Weir answered the officer's questions without the presence of an attorney. Id. at 304. Because of the acknowledgment of his rights and his answering of the questions, the Sixth Circuit held that "[a]ssuming Weir's statements were not coerced . . . , they establish an *implied* waiver of his Miranda rights." Id. at 304. The Court finds the same here. Defendant understood his rights and continued to answer questions anyway, and thus, Chambers implicitly waived his Miranda rights.

**B. Coercion**

In order for a confession to be admissible, it “must be free and voluntary; that is, [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.” United States v. Bishop, 1998 WL 385898, *3 (6th Cir. July 1, 1998) (internal quotations omitted). “When a defendant claims that a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary.” United States v. Mahan, 190 F.3d 416, 422 (6th Cir. 1999). The Sixth Circuit has established three requirements for a finding that a confession was involuntary due to police coercion: “(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement.” Mahan, 190 F .3d at 422. Under the totality of circumstances analysis, a court should also consider relevant factors, including “the defendant's age, education and intelligence; whether the defendant has been informed of his constitutional rights; the length and extent of the questioning; and the use of physical punishment, such as the deprivation of food or sleep.” Id. at 423 (citing Ledbetter v. Edwards, 35 F.3d 1062, 1067 (6th Cir. 1994)).

Defendant identifies three points in the conversation that he believes demonstrate coercion on the part of the police. The first occurred early in the conversation between the officers and Chambers.

Det. Odier: Obviously we’re here for a specific reason. Okay?

Chambers: Okay.

Odier: So obviously we have some information that we already know.

Chambers: Okay, yeah.

> Odier: And so as we go through this, it's important to remember, of course we want you to be truthful with us.
>
> Chambers: Sure, yeah.
>
> Odier: And, and we're not gonna bullshit you . . . excuse me, but we're, we're just not. Okay, it's important for you to understand there are things that we know.
>
> Chambers: Okay, sure.
>
> Odier: Okay. And . . . what we always like to tell people is, it's really hard for you to know what we know and I'm not saying you have, because I think you've been very truthful with me, okay, but when people start lying, it's really hard to keep that lie going . . .
>
> Chambers: Sure.
>
> Odier: . . . especially not knowing what we know.
>
> Chambers: Ok, sure.

[Ex. 1, DN 59-1, at 00:12:10-13:00]. Defendant describes Detective Odier's questions and statements in this section as veiled threats. Threats, both physical and psychological, can be unconstitutionally coercive. United States v. Johnson, 351 F.3d 254, 262 (6th Cir. 2003). Generally, these types of threats involve suggested physical harm to the suspect or unlawful arrest of members of the suspect's family. See Id. at 261-63. Clearly, neither of these situations is present here. In fact, it is difficult to even determine what exactly Defendant believes Detective Odier actually threatened. At most, Detective Odier sought to convey to Chambers that it was important for him to be truthful with the officers. These statements seem innocuous. Therefore, the Court finds that this alleged threat is not objectively coercive.

Next, Defendant identifies two instances during the interview where he indicated to the officers that he was experiencing "intense discomfort." [Def.'s Mot. to Suppress Recorded Statements, DN 58, at 4].

> Chambers: Well, then honestly you know, he, he, he, uh, I - I - I'm just as nervous as can be, I - I - I'm almost shaking like I am now - and then uh, he, he pulled my pants down and said "here," you know. . . .

[Ex. 1, DN 59-1, at 00:21:30-21:50].

> Det. Odier: And, did anything happen between you and his daughter then?
>
> Chambers: Yeah and, and, and, I'm, I'm, I'm not gonna lie to you here okay uh, uh, and I hope you'll understand that I'm coming at this from uh, from just scared. . . . .

[Id. at 00:36:00-36:20]. Of those two excerpts, the only indication of nervousness on Defendant's part during the actual interview was his statement, "I'm almost shaking like I am now . . . ." [Ex. 1, DN 59-1, at 00:21:30-21:50]. Otherwise, the other statements identified by Defendant about being "scared" or nervous relate to his first encounter with Kosicki and the child, not the interview itself. Despite one small indication of nervousness by Defendant, the recorded interview shows that police acted in both a polite and cordial manner towards Chambers. As an example of the atmosphere, just prior to the second dialogue where Defendant explains he is "scared," one of the officers joked about how he was a dog person when Defendant's dog was around the officer. When considering the tone of the officers and the comfort of Defendant's surroundings during questioning (e.g., officers allowing Defendant to have his dog around him), the Court finds the lack of an unconstitutionally coercive environment.

Finally, Defendant asserts that police coerced his statement by exploiting his religious beliefs.

> Det. Odier: I want to go back and I want to talk about things in a general sense. You have by your profession, devoted your life in service of God.
>
> Chambers: Yes.

Odier: And I too am but a humble servant of the Lord.

Chambers: Yeah.

Odier: And we know that the path to forgiveness begins with the truth.

Chambers: Yes.

Odier: Sometimes we have to realize what that truth is within ourselves. And I don't think you're lying to me. I don't think you're lying to Brian. Okay, but I don't think you're being completely truthful with yourself or with us.

Chambers: Okay.

(Id. at 01:17:40-1:18:44). Particularly, Defendant argues that the officer's use of his religious beliefs caused him "to 'realize' not only that he intended to commit sexual offenses, but that he affirmatively enjoyed doing them." [Def.'s Mot. to Suppress Recorded Statements, DN 58, at 4]. However, an officer's reference to a suspect's religious beliefs does not constitute unconstitutional coercion. Berghuis, 560 U.S. at 387 ("The fact that [the officer]'s question referred to [defendant]'s religious beliefs also did not render [defendant]'s statement involuntary."). Therefore, the Court also finds this argument unpersuasive.

In addition to the cordial manner in which police conducted the interview, Chambers was sixty-two years old at the time of the interview with a work history that included ten years in the banking industry and thirty years in the ministry of Baptist churches. Although officers questioned Defendant after waking him in the morning, the interview did not last long and it was conducted in a comfortable environment. Considering the totality of the circumstances, the Court finds that the United States proved by a preponderance of the evidence that Defendant's confession was voluntary.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress Recorded Statements [DN 58] is **DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

July 27, 2015

cc: counsel of record